## UNITED STATES DISTRICT COURT
## DISTRICT OF MARYLAND (Greenbelt)

| | | |
|---|---|---|
| GEORGIA ROGERS | ) | |
|     3340 Huntley Square Drive, | ) | |
|     Apt. T3 | ) | |
|     Temple Hills, MD 20748 | ) | |
| | ) | |
| SHANTAY ROSS | ) | |
|     7839 Burnside Road | ) | |
|     Hyattsville, MD 20785 | ) | Civil Action No. 8:14-CV-02940-PWG |
| | ) | |
|           Plaintiffs, | ) | |
| v. | ) | |
| | ) | |
| HOUSING AUTHORITY OF | ) | |
| PRINCE GEORGE'S COUNTY | ) | |
|     9200 Basil Court Suite 107 | ) | |
|     Largo, MD  20774 | ) | |
|     (Prince George's County) | ) | |
| | ) | |
| ERIC C. BROWN, | ) | |
| in his official capacity as Executive Director of | ) | |
| the Housing Authority of Prince George's County | ) | |
|     9200 Basil Court Suite 107 | ) | |
|     Largo, MD  20774 | ) | |
|     (Prince George's County) | ) | |
| | ) | |
|           Defendants. | ) | |

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT

## Table of Contents

STATEMENT OF FACTS ................................................................................................1

I.      The Agency and Administrative Plans Governing the Housing Choice Voucher
        Program ...........................................................................................................1

II.     The Instant Dispute ..........................................................................................3

III.    Defendants' Motion ..........................................................................................5

ARGUMENT ..............................................................................................................6

I.      Standard of Review ..........................................................................................6

II.     Ms. Rogers and Ms. Ross Have Standing To Bring Their Claims .....................7

III.    Defendants' Alternative Motion for Summary Judgment is Premature and, in Any
        Event, Premised upon a Wholly-Incorrect Recitation of the Timing of HAPGC's
        Administrative Plan .........................................................................................13

        A.      Defendants' Motion Should Not be Converted to a Motion for Summary
                Judgment ...........................................................................................14

        B.      HAPGC's "2013 Administrative Plan" Did Not Allow HAPGC to Ignore
                QHWRA's Procedural Requirements in Amending the 2014 Agency Plan to
                Implement the Cost-Saving Measures ....................................................16

        C.      Defendants' Cost-Saving Measures Are Clearly Changes to "Rent Policies," and
                Therefore Were "Significant Amendments" to the 2014 Agency Plan .......19

IV.     That Defendants Intended to Implement the Cost-Saving Measures Regardless of the
        Feedback They Received Does Not Render Their Improper Implementation
        "Harmless" ....................................................................................................21

V.      Ms. Rogers and Ms. Ross Complied with All Relevant Notice Requirements Prior to
        Filing Their Lawsuit .......................................................................................24

CONCLUSION ..........................................................................................................27

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Am. Civil Liberties Union v. F.C.C.*,
  823 F.2d 1554 (D.C. Cir. 1987) ..................................................................22

*Andrews v. Daw*,
  201 F.3d 521 (4th Cir. 2000) ......................................................................4

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ....................................................................................6

*Baldwin v. Housing Authority of City of Camden*,
  278 F. Supp. 2d 365 (D.N.J. 2003) ......................................................18, 19

*Bibum v. Prince George's Cnty.*,
  85 F. Supp. 2d 557 (D. Md. 2000) .............................................................26

*Brockington v. Boykins*,
  637 F.3d 503 (4th Cir. 2011) ......................................................................6

*Caulder v. Durham Hous. Auth.*,
  433 F.2d 998 (4th Cir. 1970) ......................................................................8

*Chocolate Mfrs. Ass'n of U.S. v. Block*,
  755 F.2d 1098 (4th Cir. 1985) ....................................................................21

*Clatterbuck v. City of Charlottesville*,
  708 F.3d 549 (4th Cir. 2013) ......................................................................6

*Coley v. Gallagher*,
  No. CIV.A. DKC 11-1504, 2013 WL 210724 (D. Md. Jan. 17, 2013)
  (unpublished) ..............................................................................................4

*Copeland v. United States*,
  622 F. Supp. 2d 1347 (S.D. Fla. 2008), *aff'd sub nom.*, *Copeland v. U.S. Dep't
  of Hous. & Urban Dev.*, 350 F. App'x 405 (11th Cir. 2009) (unpublished) ............................9

*Daniels v. Brown*,
  550 F. App'x 138 (4th Cir. 2013) (unpublished) ..................................................12

*Daniels v. Hous. Auth. of Prince George's Cnty.*,
  940 F. Supp. 2d 248 (D. Md.), *aff'd sub nom.*, *Daniels v. Brown*, 550 F. App'x
  138 (4th Cir. 2013) (unpublished) ...................................................................................11, 12

*Davis v. Mansfield Metro. Hous. Auth.*,
  751 F.2d 180 (6th Cir. 1984) .....................................................................................8

*Dorsey v. Hous. Auth. of Baltimore City*,
  984 F.2d 622 (4th Cir. 1993) .....................................................................................21

*Forshaw Indus., Inc. v. Insurco, Ltd.*,
  2 F. Supp. 3d 772, 784 (W.D.N.C. 2014) ...............................................................13

*Holbrook v. Pitt*,
  643 F.2d 1261 (7th Cir. 1981) ...................................................................................8

*Humbert v. O'Malley*,
  No. CIV. WDQ-11-0440, 2011 WL 6019689 (D. Md. Nov. 29, 2011)
  (unpublished) .............................................................................................................4

*Johnson v. Hous. Auth. of Jefferson Parish*,
  442 F.3d 356 (5th Cir. 2006) .....................................................................................11

*Lujan v. Defenders of Wildlife*,
  504 U.S. 555 (1992)....................................................................................................7

*Madore v. Baltimore Cnty.*,
  367 A.2d 54 (Md. 1976) ..........................................................................................26

*Mathews v. Eldridge*,
  424 U.S. 319 (1976)....................................................................................................21

*Meyers v. Lamer*,
  743 F.3d 908 (4th Cir. 2014) .................................................................................7, 13

*Moore v. Norouzi*,
  807 A.2d 632 (Md. 2002) ..........................................................................................25

*New York City Council v. New York City Housing Authority*,
  983 N.Y.S.2d 204 (Sup. Ct. 2013)............................................................................10

*Nozzi v. Hous. Auth. of City of Los Angeles*,
  425 F. App'x 539 (9th Cir. 2011) (unpublished) .....................................................8

*Occupy Columbia v. Haley*,
  738 F.3d 107 (4th Cir. 2013) .....................................................................................6

*Pegues v. Wal-Mart Stores, Inc.*,
   No. PWG-14-706, 2014 WL 5510919 (D. Md. Oct. 30, 2014) .........................................14, 15

*RaceRedi Motorsports, LLC v. Dart Mach. Ltd.*,
   640 F. Supp. 2d 660, 669 (D. Md. 2009) ..............................................................................13

*Sager v. Hous. Comm'n of Anne Arundel Cnty.*,
   855 F. Supp. 2d 524 (D. Md. 2012) ....................................................................8, 11, 12, 14

*Shell v. U.S. Dep't of Hous. & Urban Dev.*,
   355 F. App'x 300 (11th Cir. 2009) (unpublished) ................................................................9

*Stone v. Univ. of Md. Med. Sys. Corp.*,
   855 F.2d 167 (4th Cir. 1988) ...............................................................................................7

*Thomas v. Butzen*,
   No. 04-C-5555, 2005 WL 2387676 (N.D. Ill. Sept. 26, 2005) ...........................................10

*Wallace v. Chicago Hous. Auth.*,
   298 F. Supp. 2d 710 (N.D. Ill. 2003) .................................................................................10

*Wright v. City of Roanoke Redevelopment & Hous. Auth.*,
   479 U.S. 418 (1987) ........................................................................................................11, 20

**Statutes**

42 U.S.C. § 1437a(a)(1) ....................................................................................................12

42 U.S.C. § 1437c-1 ............................................................................................................2

42 U.S.C. § 1437f ...............................................................................................................1

42 U.S.C. § 1437f(y) ..........................................................................................................12

Md. Code Ann., Cts. & Jud. Proc. § 5–304 (2013) ..............................................24, 25, 26

Quality Housing and Work Responsibility Act ("QHWRA"),
   Pub L. No. 105-276, 112 Stat. 2461 (1998) ........................................................................1

**Regulations**

24 C.F.R. § 903.4 ................................................................................................................2

24 C.F.R. § 903.7(r)(2) .......................................................................................................2

24 C.F.R. § 903.25 ..............................................................................................................9

24 C.F.R. § 982.54(a) ..........................................................................................................3

24 C.F.R. § 982.54(b) ...................................................................................................3, 18

**Rules**

Fed. R. Civ. P. 12(b)(6)...............................................................................................6, 14

Fed. R. Civ. P. 12(d) ......................................................................................................7

Fed. R. Civ. P. 56(a) ......................................................................................................7

**Other Authorities**

*Merriam-Webster Collegiate Dictionary*, *available at* http://www.merriam-
    webster.com/dictionary/rent (last visited Jan. 8, 2014) .........................................20

**PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS OR IN THE ALTERNATIVE, FOR SUMMARY JUDGMENT**

Plaintiffs, Georgia Rogers and Shantay Ross, by and through undersigned counsel,

respectfully submit this Memorandum of Law in Opposition to the December 1, 2014 Motion to

Dismiss, or in the Alternative, Motion for Summary Judgment (Dkt. #22) filed by Defendants in

this matter, the Housing Authority of Prince George's County ("HAPGC") and its Executive

Director, Eric C. Brown.  For the reasons set forth herein, Defendants' motion to dismiss should

be denied because Ms. Rogers and Ms. Ross clearly have standing to challenge Defendants'

improper reductions of their constitutionally-protected voucher amounts and have set forth

plausible claims that Defendants violated their due process rights.  Defendants' motion should

not be converted to one for summary judgment because there has been no opportunity for

discovery.  However, should the court convert it to a summary judgment motion, such relief

should be denied, or at the very least, deferred, because there are disputed material facts.

Finally, Ms. Rogers and Ms. Ross provided Defendants sufficient notice of their claims under the

Maryland Declaration of Rights.

## STATEMENT OF FACTS

**I.      The Agency and Administrative Plans Governing the Housing Choice**
**        Voucher Program**

In their complaint, Ms. Rogers and Ms. Ross plead in detail the framework of the Section

8 Housing Program, and the statutory provisions that establish the program and govern its

administration as set out in the United States Housing Act of 1937 (the "Housing Act"), *see* 42

U.S.C. § 1437f, and Quality Housing and Work Responsibility Act ("QHWRA"), Pub L. No.

105-276, 112 Stat. 2461 (1998).  *See* Compl. ¶¶ 14-23.  Accordingly, we do not endeavor to

restate that framework here, and instead only briefly address those provisions of the statutes (and

accompanying U.S. Department of Housing and Urban Development ("HUD") regulations)

1

relevant to Defendants' motion and Ms. Rogers' and Ms. Ross' Opposition—specifically, those related to the "Agency" and "Administrative" plans to which Defendants repeatedly refer in their motion.

Pursuant to QHWRA, a Public Housing Authority ("PHA") charged with administering the Housing Choice Voucher Program ("HCVP") under the supervision of HUD must file with HUD a comprehensive plan outlining that administration. *See* 42 U.S.C. § 1437c-1; HUD Housing Choice Voucher Guidebook, Section 3.3; Compl. ¶ 19. That plan, referred to in the Complaint and Defendants' motion as the "Agency Plan," consists of two documents: a Five-Year Plan that includes a PHA's mission statement for serving the needs of low-income families, as well as a statement of goals for meeting those needs, *see* § 1437c-1(a); and an "Annual Plan" "for each fiscal year for which the [PHA] receives assistance [for the Section 8 HCVP]." § 1437c-1(b); Compl. ¶ 19. The Agency Plan must include an explanation of the PHA's rent determination and voucher amounts for HCVP participants. § 1437c-1(b); Compl. ¶ 20. HUD has implemented similar regulations governing PHA Agency Plan requirements. *See* 24 C.F.R. § 903.4; Compl. ¶ 21.

In its Agency Plan, a PHA must identify the basic criteria it will use for determining: (i) a substantial deviation from its 5-Year Plan; and (ii) a significant amendment or modification to its 5-Year Plan and Annual Plan. 24 C.F.R. § 903.7(r)(2); Compl. ¶ 26. Importantly, a PHA may not institute "a significant amendment or modification" to this Agency Plan until (1) that amendment or modification is adopted at a meeting of the PHA's board of directors that is open to the public, and (2) HUD is notified of and approves the amendment or modification. *See* § 1437c-1(g)(1); Compl. ¶ 22. QHWRA requires that notice of any public hearing regarding a

potential significant amendment to an Agency Plan be provided by the PHA not less than 45

days prior to the date upon which the hearing is to occur.  *See* § 1437c-1(g)(2)(B); Compl. ¶ 23.

      In addition to the Agency Plan, a PHA is also required to create an "Administrative

Plan," that "establishes local policies for administration of the program in accordance with HUD

requirements."  24 C.F.R. § 982.54(a).  As is relevant to this dispute, HUD's regulations direct

that a PHA's Administrative Plan "*is a supporting document*" to a PHA's Agency Plan.  24

C.F.R. § 982.54(b) (emphasis supplied).

## II.   The Instant Dispute

      Ms. Rogers' and Ms. Ross' claims are not complicated.  As outlined in their complaint,

on July 23, 2013, Defendant Brown issued a letter explaining that as a result of federal budget

cuts, HAPGC was "tak[ing] a number of cost saving measures and program adjustments" to the

HCVP, including but not limited to: (1) the increase of the minimum rent amount HCVP

participants must pay from $0 to $50; (2) reserving the right to deny "portability moves" by

HCVP participants; (3) the imposition of new occupancy standards "based on two persons per

bedroom regardless of relation, gender, or age"; (4) the application of lower payment standards."

*See* Compl. ¶¶ 36-37.  At the time Mr. Brown issued his letter, the Agency Plan governing

HAPGC's administration of the HCVP was its "2014 Agency Plan," which was submitted to

HUD on April 17, 2013, more than three months prior to the date of Mr. Brown's letter.  *See*

Dkt. 22-3, p. 26.  HAPGC's 2014 Agency Plan directed that Section 8 payment standards were at

100% of Fair Market Rents (higher than those identified in Mr. Brown's letter as part of the cost-

saving measures) and that the minimum rent for HCVP participants was $0.  *Id.* at p. 32.  It also

made no mention of changes to the occupancy standards for HCVP participants.  *Id.*  All of the

cost-saving measures identified in Mr. Brown's letter served to increase the amount of rent

HCVP would be required to pay to maintain their residences.  *See* Compl. ¶¶ 37, 40.

3

Accordingly, the cost-saving measures identified in Mr. Brown's letter were "significant changes" to the 2014 Agency Plan. Indeed, HAPGC's 2014 Agency Plan *itself* defined "significant amendments" to include "[c]hanges to rent or admissions policies[.]" *See* Dkt. 22-3, p. 33; Compl. ¶¶ 38-39. Thus, the cost-saving measures should have been subject to all of the notice and procedural requirements established by QHWRA and HUD's implementing regulations, as outlined above. *See* Compl. ¶¶ 41-42. They were not, and HAPGC's failure to comply with requisite procedures prior to making drastic changes to Ms. Rogers' and Ms. Ross' Section 8 voucher payments is the crux of this lawsuit.[1] As a result of the improperly-implemented cost-saving measures, Ms. Rogers' housing assistance payment has been reduced from $1,076 to $932 each month. Compl. ¶¶ 76-79. Similarly, prior to the cost-saving measures, Ms. Ross received $1,900 in monthly rental assistance plus a $621 monthly utility allowance; those amounts have been reduced to $1,710 and $0. Compl. ¶¶ 84-85. Moreover, Ms. Ross has been unable to secure new housing as a result of her reduced voucher amount. Compl. ¶¶ 86-87. Defendants argue that even if they erred in implementing the cost-saving

---

[1]     Defendants urge that the claims against Defendant Brown should be dismissed because the Complaint does not identify a wrongful action on his part or assert that he "breached his duties to oversee or supervise." Defs.' Mem. at 19-20. This argument lacks legal support and conflates the distinction between suits against officials in their individual and official capacities. Importantly, Ms. Rogers and Ms. Ross do not assert a failure to supervise claim against Defendant Brown or otherwise bring a claim against him in his individual capacity. *See, e.g.*, *Coley v. Gallagher*, No. CIV.A. DKC 11-1504, 2013 WL 210724, at *9 (D. Md. Jan. 17, 2013) (unpublished) (observing that a claim against officials for failure to supervise is a claim against them in their individual capacity); *Humbert v. O'Malley*, No. CIV. WDQ-11-0440, 2011 WL 6019689, at *7 (D. Md. Nov. 29, 2011) (unpublished) (same). Instead, Mr. Brown has been sued in his official capacity. As a result, the claims against him are simply "another way of pleading an action against an entity of which an [official] is an agent and [are] in essence [claims] against the entity." *See Andrews v. Daw*, 201 F.3d 521, 525 (4th Cir. 2000) (citation and internal quotation marks omitted). Therefore, by presenting plausible claims that HAPGC violated their due process rights, Ms. Rogers and Ms. Ross properly allege claims against Mr. Brown in his official capacity. *See id.* (explaining that "the real party in interest in an official-capacity suit is the entity, [because] a plaintiff can only recover damages from the entity itself").

measures, those errors were "of no practical consequence." Defs.' Mem. at 16. But to low-income HCVP participants such as Ms. Rogers and Ms. Ross, that could not be further from the truth. HAPGC's improperly-implemented cost-saving measures have had a quantifiable impact upon their ability to stay in their homes and/or to secure new, safe housing consistent with Congress' authorization of these subsidies under the Section 8 program to assist "low-income families in obtaining a decent place to live[.]" Compl. ¶ 14 (citing 42 U.S.C. § 1437(f)).

### III.   Defendants' Motion

In response to the allegations in the Complaint, Defendants' motion makes two overarching arguments. First, as a basis for their motion to dismiss, Defendants argue that Ms. Rogers and Ms. Ross lack standing to challenge HAPGC's actions. This argument fails because it is well established that housing benefits are constitutionally protected property rights that may not be reduced or eliminated without due process of law, and therefore Ms. Rogers' and Ms. Ross' claims are properly presented here. Second, as bases for summary judgment relief, Defendants argue that they were not required to comply with any of QHWRA's procedural requirements prior to implementing the cost-saving measures because: (1) HAPGC's "2013 Administrative Plan" already allowed for their implementation; and (2) HAPGC's implementation of the cost-saving measures was *fait accompli*, regardless of whether Ms. Rogers and Ms. Ross had been given an opportunity to comment. These arguments fail. First, the support Defendants attempt to draw for their actions from the "2013 Administrative Plan" is based upon a set of incomplete, internally inconsistent, and nearly incoherent set of HAPGC plan documents attached to Defendants' motion. These documents are not publically available and Ms. Rogers' and Ms. Ross' counsel has not had any opportunity to review complete versions of these documents. Second, Defendants' intent to implement the cost-saving measures regardless of any feedback they received prior to their implementation is not grounds for denying due

process rights.  Thus, as is explained in more detail below, Defendants' motion for summary judgment should be deferred (or denied outright) until there is an opportunity to conduct discovery.

## ARGUMENT

### I.    Standard of Review

A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) must be denied when the "complaint . . . contain[s] facts sufficient 'to raise a right to relief above the speculative level' and 'state a claim to relief that is plausible on its face.'"  *Occupy Columbia v. Haley*, 738 F.3d 107, 116 (4th Cir. 2013) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). While there must be more than a "sheer possibility" of the defendant's liability, the "plausibility standard is not akin to a 'probability requirement.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Instead, after accepting all factual allegations as true and viewing them in the light most favorable to the plaintiff, the court must deny a motion to dismiss when the allegations establish a "facial plausibility . . . that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *See Clatterbuck v. City of Charlottesville*, 708 F.3d 549, 554 (4th Cir. 2013) (citation and internal quotation marks omitted); *see also Brockington v. Boykins*, 637 F.3d 503, 505–06 (4th Cir. 2011) (explaining that dismissal "is inappropriate unless, accepting as true the well-pled facts in the complaint and viewing them in the light most favorable to the plaintiff, the plaintiff is unable to state a claim to relief" (citation and internal quotation marks omitted)).  Here, accepting as true the facts alleged in the Complaint, Ms. Rogers and Ms. Ross have established clearly plausible claims that Defendants violated their due process rights.

Because Defendants alternatively seek summary judgment relief, the Court has discretion to look outside the pleadings and treat Defendants' motion as one for summary judgment.  *See*

Fed. R. Civ. P. 12(d).  Summary judgment is only appropriate when, after drawing all reasonable inferences in favor of the non-moving party, "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a); *see also Meyers v. Lamer*, 743 F.3d 908, 911 (4th Cir. 2014) (explaining that "[a]ny reasonable inferences are to be drawn in favor of . . . the nonmoving party").  As discussed below, the Court should decide Defendants' motion as a motion to dismiss and not look outside the pleadings because Ms. Rogers and Ms. Ross have not been afforded any opportunity for discovery.  However, even if Defendants' motion is treated as a motion for summary judgment, such relief is not appropriate because numerous material facts remain in dispute as to the propriety of Defendants' implementation of the cost-saving measures.

## II.     Ms. Rogers and Ms. Ross Have Standing To Bring Their Claims

Defendants' protestations to the contrary, Ms. Rogers and Ms. Ross clearly have standing to bring their § 1983 claims premised on Defendants' unconstitutional deprivation of their Section 8 housing benefits.  Standing exists when a plaintiff has been injured by a defendant's conduct and the injury may be redressed by a decision in her favor.  *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560-61 (1992).   To proceed on their § 1983 claims premised on a deprivation of property without due process, Ms. Rogers and Ms. Ross must show that (1) they have a constitutionally protected property interest, and (2) that state action has deprived them of this interest in violation of due process.  *See Stone v. Univ. of Md. Med. Sys. Corp.*, 855 F.2d 167, 172 (4th Cir. 1988) (citing *Board of Regents v. Roth*, 408 U.S. 564, 569–70 (1972)).  Ms. Rogers and Ms. Ross satisfy both elements of that test here.

It is well-settled in the federal courts that recipients of housing subsidy benefits have a constitutionally-protected property interest in Section 8 housing assistance payments such that a

local housing authority cannot reduce or eliminate these benefits without due process of the law.[2]

Indeed, the Fourth Circuit has observed that "state-created, federally-funded, locally-administered housing authorities are constrained to conduct their operations within the limits of the due process clause of the [F]ourteenth [A]mendment." *Caulder*, 433 F.2d at 1002.

Here, Defendants ignored the policies and procedures established by the Housing Act, its implementing regulations, and the Agency Plan when executing the cost-saving measures. *See* Compl. ¶ 42 (explaining that, among other things, the Defendants failed to provide a public hearing on the cost-saving measures or allow for a 10-day public review period). As a result, they calculated Ms. Rogers' and Ms. Ross' housing subsidies using new occupancy standards, minimum rent requirements, and payment standards, absent notice or any opportunity to comment, thereby depriving Ms. Rogers and Ms. Ross of a property interest without due process of the law.[3] All told, Defendants' actions deprive Ms. Rogers and Ms. Ross of $144 and $811

---

[2]      *See, e.g.*, *Caulder v. Durham Hous. Auth.*, 433 F.2d 998, 1001 (4th Cir. 1970) (participants in Section 8 housing program entitled to due process protections); *see also Sager v. Hous. Comm'n of Anne Arundel Cnty.*, 855 F. Supp. 2d 524, 562 (D. Md. 2012) (recognizing § 1983 claim alleging deprivation of due process where local housing authority did not conduct grievance hearings in accordance with the Housing Act and its implementing regulations); *see also Nozzi v. Hous. Auth. of City of Los Angeles*, 425 F. App'x 539, 541 (9th Cir. 2011) (unpublished) ("Section 8 participants have a property interest in housing benefits by virtue of their membership in a class of individuals whom the Section 8 program was designed to benefit." (citation and internal quotation marks omitted)); *Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180, 184 (6th Cir. 1984) ("[P]articipation in a public housing program is a property interest protected by due process."); *Holbrook v. Pitt*, 643 F.2d 1261, 1278 (7th Cir. 1981) ("Courts have held in a variety of circumstances that certified tenants in Section 8 programs have protectable property interests under the due process clause.").

[3]      In addition, no participant in the housing programs was provided any notice of these cost saving measures or any opportunity to comment on them. Indeed, as Ms. Rogers and Ms. Ross allege in their complaint, "HAPGC did not actually mail or otherwise transmit the July 23, 2013 letter outlining the cost-savings measures to any HCVP participants at the time that it was prepared." Compl. ¶ 44.

each month, respectively.   Consequently, Ms. Rogers and Ms. Ross seek to restore their

constitutionally-protected property interest by asserting two § 1983 claims premised on

violations of the Due Process Clause of the Fourteenth Amendment and the Maryland

Declaration of Rights.

Defendants suggest that Ms. Rogers' and Ms. Ross' sole remedy lies in 24 C.F.R.

§ 903.25, which provides HUD authority to investigate complaints concerning a local housing

authority's non-compliance with a housing plan.  *See* 24 C.F.R. § 903.25.  Ms. Rogers and Ms.

Ross do not dispute HUD's authority to address HAPGC's QHWRA violations in failing to

follow its 2014 Agency Plan, but nothing in § 903.25 suggests that HUD alone may ensure PHA

plan compliance.[4]  Regardless, Ms. Rogers and Ms. Ross have not sued HUD or alleged any

failure to enforce the housing plan under § 903.25.  Instead, Ms. Rogers and Ms. Ross assert

§ 1983 claims premised on the Due Process Clause of the Fourteenth Amendment and the

Maryland Declaration of Rights.  As a result, the cases cited by Defendants that involve

dismissals of actions *against HUD* for allegedly failing to investigate under § 903.25 are

inapposite.  *See, e.g.*, *Shell*, 355 F. App'x at 306 (dismissing plaintiff's claim against HUD

because under the Administrative Procedures Act, HUD has discretion in its response to a

complaint concerning a local housing authority's alleged noncompliance with its five-year and

annual plans); *Copeland v. United States*, 622 F. Supp. 2d 1347, 1352 (S.D. Fla. 2008), *aff'd sub*

---

[4]      Indeed, the Court of Appeals for the Eleventh Circuit has implicitly recognized that
§ 903.25 does not provide an exclusive means of relief.  *See Shell v. U.S. Dep't of Hous. &
Urban Dev.*, 355 F. App'x 300, 307 (11th Cir. 2009) (unpublished).  In *Shell*, after dismissing a
claim against HUD based on its alleged failure to act under § 903.25 to enforce the terms of a
housing plan, the court acknowledged the possibility of a claim against the local housing
authority itself.  *See Shell*, 355 F. App'x at 307.

*nom.*, *Copeland v. U.S. Dep't of Hous. & Urban Dev.*, 350 F. App'x 405 (11th Cir. 2009)

(unpublished) (same).

In addition, Defendants assert that the Housing Act provides no private right of action for

Ms. Rogers' and Ms. Ross' claims. *See, e.g.*, Defs.' Mem. at 12. As an initial matter, this

position ignores that Ms. Rogers and Ms. Ross are not asserting § 1983 claims premised directly

on a violation of the Housing Act, but rather ground their § 1983 claims in the Due Process

Clause of the Fourteenth Amendment and the Maryland Declaration of Rights. As a result,

Defendants' arguments that there is no private cause of action, and the cases cited in support

thereof, have no bearing here.[5] Indeed, Defendants have not argued that Ms. Rogers and Ms.

Ross have standing for their § 1983 claims premised on their allegations of constitutional

violations.

Nevertheless, while Ms. Rogers' and Ms. Ross' claims are grounded in a deprivation of

their constitutional rights, Defendants *did* violate the Housing Act, and these violations buttress

Ms. Rogers' and Ms. Ross' standing to bring this suit. The Supreme Court has held that certain

provisions of the Housing Act provide participants with "specific or definable rights" that are not

---

[5]     For instance, the New York state court's discussion in *New York City Council v. New York City Housing Authority*, which Defendants quote at length, was based on a § 1983 claim premised directly on a violation of the Housing Act, without any allegations of a constitutional violation. 983 N.Y.S.2d 204 (Sup. Ct. 2013). Moreover, the entire discussion quoted by Defendants was dicta—the court had already denied the § 1983 claim after concluding that the housing authority in question did not violate the Housing Act. *See id.* And in *Thomas v. Butzen*, the court similarly addressed the availability of a private right of action for enforcing the Housing Act under § 1983 absent any allegation that plaintiff's constitutional rights had been infringed. No. 04-C-5555, 2005 WL 2387676, at *11 (N.D. Ill. Sept. 26, 2005). Notably, while *Thomas* suggests there is not a private right of action under § 1437c–1, a court in the same district concluded the opposite and recognized such a right under the same provision. *Compare Wallace v. Chicago Hous. Auth.*, 298 F. Supp. 2d 710, 720 (N.D. Ill. 2003) (recognizing private right of action under § 1437c–1), *with Thomas*, 2005 WL 2387676, at *11 (declining to recognize a private right of action under § 1437c–1).

"beyond the competence of the judiciary to enforce" under § 1983.  *See Wright v. City of Roanoke Redevelopment & Hous. Auth.*, 479 U.S. 418, 430, 432 (1987) (involving a § 1983 claim challenging a local housing authority's calculation of utility payments for public housing tenants under the Housing Act); *see also Johnson v. Hous. Auth. of Jefferson Parish*, 442 F.3d 356, 357 (5th Cir. 2006) (holding that Section 8 tenants may bring a § 1983 claim based on local housing authority's failure to properly calculate their utility allowance § 1437f(o)(2)).  Applying this rationale, this Court recently recognized that a housing subsidy under the Housing Act's Homeownership Option was a "tangible, specific, and definite benefit" that could serve as the basis for a § 1983 claim.  *See Daniels v. Hous. Auth. of Prince George's Cnty.*, 940 F. Supp. 2d 248, 263 (D. Md.), *aff'd sub nom.*, *Daniels v. Brown*, 550 F. App'x 138 (4th Cir. 2013) (unpublished).[6]  The Court also observed that "where HUD regulations or Administrative Plan provisions define or flesh out the context of the right found in the statute itself, [p]laintiff's § 1983 claims may be based on violations of such regulations and provisions."  *Id.* (recognizing "a right to enforce those provisions of the HUD regulations and Administrative Plan that define

---

[6]     Defendants do not address this Court's decision in *Daniels*.  Instead, they rely on this Court's decision in *Sager v. Housing Commission of Anne Arundel County*, 855 F. Supp. 2d 524, 548 (D. Md. 2012), which similarly recognized a private right of action under the Housing Act. Defendants assert that this private right of action exists only for "personal" rather than "general" rights.  Defs.' Mem. at 12.  However, this distinction between personal and general rights for purposes of determining whether a private right of action exists is not discussed in *Sager* and finds no support in this Court's holding in *Daniels*.  Instead, *Sager* recognizes that "[t]o the extent that [a plaintiff] asserts violations of specific and definable rights conferred on residents of public housing by the Housing Act, her claims do not fail for want of a private right of action." *See Sager*, 855 F. Supp. 2d at 548.  Therefore, contrary to Defendants' suggestion, this Court's holding in *Sager* supports Ms. Rogers' and Ms. Ross' standing argument, as they seek to protect their specific and definable right to a properly-calculated housing subsidy that is not based on improperly-implemented cost-saving measures.

the housing authority's obligations and have a direct impact on the calculation of . . . monthly assistance payments").[7]

Here, Defendants failed to follow the Housing Act, its implementing regulations and the Agency Plan when enacting their cost-saving measures.  As a result, Defendants calculated Ms. Rogers' and Ms. Ross' housing benefits based on improperly-implemented criteria, including invalid occupancy requirements, new minimum rent requirements, and payment standards.  In practical terms, these improper calculations reduced the monthly rental subsidies for Ms. Rogers and Ms. Ross by 13% and 33%, respectively.  This Court's decision in *Daniels* demonstrates that Ms. Rogers' and Ms. Ross' rental housing subsidies represent a tangible, specific, and definite benefit under the Housing Act.  *See* 940 F. Supp. 2d at 263.  Indeed, for purposes of this case, there is no material difference between a subsidy under the Homeownership Option considered in *Daniels* and Ms. Rogers' and Ms. Ross' rent subsidies—both ensure that a participant's payment for housing is limited to the highest of 30% of adjusted income, 10% of income, or the amount of welfare benefits designated for housing.  *Compare* 42 U.S.C. § 1437a(a)(1), *with* 42 U.S.C. § 1437f(y).  Therefore, while Ms. Rogers' and Ms. Ross' § 1983 claims are premised on violations of the Due Process Clause of the Fourteenth Amendment and the Maryland Declaration of Rights, their standing is buttressed by Defendants' failure to properly calculate the

---

[7]      On appeal in *Daniels*, the HAPGC and Defendant Brown—the same defendants in the present action—did not dispute that the Homeownership Option is an enforceable right provided by the Housing Act.  *See Daniels v. Brown*, 550 F. App'x 138, 139 n.2 (4th Cir. 2013) (unpublished).

subsidies, which represent specific, definable rights provided by the Housing Act.  *See Sager*,

855 F. Supp. 2d at 548.  Therefore, Defendants' motion to dismiss should be denied.[8]

## III.     Defendants' Alternative Motion for Summary Judgment is Premature and, in Any Event, Premised upon a Wholly-Incorrect Recitation of the Timing of HAPGC's Administrative Plan

As an alternative to their standing argument, Defendants request that the court look

outside the pleadings and convert their motion into one for summary judgment.  They argue that

the cost-saving measures were appropriately implemented because they were authorized by

HAPGC's "2013 Administrative Plan," which, according to Defendants, "went into effect" on

July 1, 2012, prior to the 2014 Agency Plan.  Defs.' Mem. at 16.  At the outset, Defendants

motion should not be considered as a motion for summary judgment because Ms. Rogers and

Ms. Ross have not yet had an opportunity to take any discovery in this matter.  Even if the

motion were converted to one for summary judgment, Defendants' argument in reliance upon the

Administrative Plan is demonstrably incorrect and relies on disputed material facts.

Notwithstanding Defendants' reference to it as the "2013 Administrative Plan," the relevant

sections of that plan upon which Defendants rely (all of which are appended to Defendants'

motion) were instituted nearly three full months *after* the 2014 Agency Plan was issued.

---

[8]      Contrary to Defendants' assertion, Ms. Rogers and Ms. Ross request both preliminary
and permanent injunctive relief.  *See* Compl. ¶ 22; *see also* Compl. ¶ 12.  Regardless,
Defendants' arguments that injunctive relief is not proper are premature.  First, Ms. Rogers and
Ms. Ross have not filed a motion for a preliminary injunction, and therefore, this issue is not
currently before the court.  *See RaceRedi Motorsports, LLC v. Dart Mach.*, Ltd., 640 F. Supp. 2d
660, 669 (D. Md. 2009) ("While [a party] end[ed] its Counterclaim with a prayer that the Court
'enter a TRO, preliminary injunction and permanent injunction' . . . [the party] has not filed a
motion for a temporary restraining order or preliminary injunction," and therefore, "the issue of
[the party's] entitlement to any preliminary injunctive relief . . . is not before the court.").
Second, as discussed below, there are factual disputes underlying Ms. Rogers' and Ms. Ross'
basis for permanent injunctive relief, and therefore, their request for a permanent injunction
cannot be resolved at this juncture.  *See Meyers*, 743 F.3d at 911; *see also Forshaw Indus., Inc.
v. Insurco, Ltd.*, 2 F. Supp. 3d 772, 784 (W.D.N.C. 2014) ("A motion to dismiss does not resolve
factual disputes, the merits of a claim, or the applicability of defenses.").

Accordingly, there are material facts regarding the implementation of the cost-saving measures that are in dispute, and therefore Defendants' motion for summary judgment should be denied. *See Meyers*, 743 F.3d at 911.

> **A. Defendants' Motion Should Not be Converted to a Motion for Summary Judgment**

As Defendants admit, "in reviewing a Rule 12(b)(6) motion, the Court should accept all well-pleaded allegations in a plaintiff's complaint as true and draw all reasonable inference form those facts in the plaintiff's favor." Defs.' Mem. at 10 (citing *Edwards v. City of Goldsboro*, 178 F.3d 231, 243-44 (4th Cir. 1999)). Here, the well-pled facts in the Complaint demonstrate that Defendants' cost-saving measures constitute significant amendments to the 2014 Agency Plan that were enacted without regard for the necessary procedural requirements. Compl. ¶¶ 36-40. Therefore, Defendants' motion should be denied and discovery permitted to proceed in this matter.

Nonetheless, Defendants request that this Court ignore the well-established pleading thresholds and resolve the facts of this case by finding that, in fact, no significant amendments to the 2014 Agency Plan occurred. In support of this request, Defendants include an affidavit from Mr. Brown, which attaches a number of documents not included with (nor integral) to the Complaint (including internal HAPGC communications). Therefore, these documents cannot be considered unless Defendants' motion is converted to a motion for summary judgment. *See Pegues v. Wal-Mart Stores, Inc.*, No. PWG-14-706, 2014 WL 5510919, at *2 (D. Md. Oct. 30, 2014) ("[I]f the Court considers matters outside the pleadings[,] the Court must treat the motion as a motion for summary judgment.") (citing Fed. R. Civ. P. 12(d)).

However, because this litigation has only just commenced (Defendants' motion here is the first responsive pleading to Ms. Rogers' and Ms. Ross' complaint) and no discovery has been

performed, converting Defendants' motion into one for summary judgment relief would be premature.  *See Sager*, 855 F. Supp. 2d at 542 (explaining that the court's "discretion [to convert a motion into one for summary judgment] should be exercised with great caution and attention [should be given] to the parties' procedural rights [and] . . . whether discovery prior to the utilization of the summary judgment procedure is necessary." (citation and internal quotation marks omitted)); *see also Pegues*, 2014 WL 5510919, at *4 ("Given the early stage of this litigation, the fact that discovery has not yet commenced, and the threadbare nature of Pegues's opposition to the motion to dismiss, [the court] decline[s] to exercise [its] discretion here, and instead find[s] that it would be premature to consider this motion as one for summary judgment. Discovery will fill in the details that will make summary judgment a more appropriate vehicle for testing the factual support for [p]laintiff's claim.").

Here, discovery is necessary for Ms. Rogers and Ms. Ross to explore a variety of issues related to the implementation of the cost-saving measures, including but not limited to (1) HAPGC's understanding of and compliance with the notice and comment procedures related to changes to its Agency Plan; (2) the extent of its communications with HUD about the implementation of the cost-saving measures, including whether HUD properly directed their implementation prior to relevant notice and comment requirements; and (3) what notice-and-comment procedures, if any, Defendants undertook in issuing the 2013 modifications to the HAPGC Administrative Plan (discussed in more detail below).  *See* Ex. A, Declaration of Sabrina B. Wear.  The various documents appended to Defendants' motion do not address any of these issues, all of which are directly relevant to Ms. Rogers' and Ms. Ross' claims.  Therefore, considering facts presented by Defendants that are outside of the pleadings—thereby converting to a motion for summary judgment—would be premature without affording an opportunity for

15

discovery.  Ms. Rogers and Ms. Ross respectfully request that the Court deny Defendants'

motion to dismiss and not convert it to a motion for summary judgment.

> **B.      HAPGC's "2013 Administrative Plan" Did Not Allow HAPGC to
> Ignore QHWRA's Procedural Requirements in Amending the 2014
> Agency Plan to Implement the Cost-Saving Measures**

Should the Court convert Defendants' motion into a motion for summary judgment,

Defendants' arguments fail because they are based on a wholesale misunderstanding of

HAPGC's Administrative Plan.  Throughout their motion, Defendants repeatedly argue that the

"2013 Administrative Plan" was "the more detailed plan and already in place by the time the

2014 Agency Plan was under consideration" and allowed for HAPGC's implementation of the

cost-saving measures without the notice-and-comment requirements set forth in QHWRA and

HUD's regulations.  *See* Defs.' Mem. 4; *see also id.* at 12 ("HAPGC's Administrative Plan

already allowed the cost saving[] measures about which the Agency Plan was changed to be

more focused").  But those arguments are misplaced for at least three reasons.

*First*, despite Defendants' repeated reference to it as the "2013 Administrative Plan," the

relevant sections of the Administrative Plan on which Defendants rely in support of their

argument were implemented *after* the 2014 Agency Plan.  The relevant sections of HAPGC's

2014 Agency Plan are appended to Defendants' memorandum at Exhibit C, *see* Dkt. 22-3 at p.

26, and indicate that the plan was dated April 17, 2013, *id.*, and was provided to HUD on that

same day. *Id.* at p. 29.   The Administrative Plan to which Defendants repeatedly refer is

appended to their memorandum at Exhibit A.  *Id.* at p. 3.  The introductory pages of that

Administrative Plan indicate that its most recent revision date was April 1, 2012, *id.* at p. 6,

which, of course, predates the April 17, 2013 effective date of the 2014 Agency Plan.  But the

specific pages of the Administrative Plan to which Defendants cite in their motion—

implementing a two person per bedroom occupancy standard and a minimum rent of $50, *see*

16

Defs.' Mem. at  4, 7—expressly state that they were part of an Administrative Plan that was revised in June 2013, more than two months after the issuance of the 2014 Agency Plan.  *See* Dkt. 22-3 at pp. 17, 18.  Indeed, a review of the complete document that Defendants refer to as the "2013 Administrative Plan" indicates that it appears to be at least two separate Administrative Plans that were cobbled together for purposes of Defendants' motion.  *Compare* Dkt. 22-3 at pp. 8-15 (Administrative Plan Table of Content pages, all of which are dated April 1, 2012), *with* Dkt. 22-3 at pp. 16-18 (specific pages of Administrative Plan, all of which indicate that they were revised in June 2013).  Given that the relevant pages of the Administrative Plan upon which Defendants rely post-date the 2014 Agency Plan, they could not "[give Defendants] the right to do everything they made clear in their cost-saving letter."[9]  Defs.' Mem. at 10.

  *Second*, although Defendants summarily state that the "2013 Administrative Plan" "went through the necessary public review and comment process," Defs.' Mem. at 8, Defendants provide no explanation as to when that public review and comment process occurred, whether it was publicized ahead of time in accordance with QHWRA and HUD requirements, or whether the Administrative Plan, which inarguably modified rent policies in the 2014 Agency Plan, was approved by HUD, and when that approval occurred.  Indeed, the only document either party has provided related the 2013 revisions to HAPGC's Administrative Plan was a June 24, 2013 resolution of the HAPGC Board of Commissioners authorizing those changes that Ms. Rogers and Ms. Ross attached to their Complaint.  *See* Compl., Ex. F.  But nothing in that resolution

---

[9]  In addition, it is fair to infer that neither the 2012 revisions to HAPGC's Administrative Plan, nor any other revisions prior to 2012,  allowed for the cost-saving measures, otherwise Defendants would have relied on those prior revisions in support of their argument that the Administrative Plan allows for the implementation of these measures.

indicates that it "went through the necessary public review and comment process."  Defs.' Mem.
at 8.

    *Third*, the plain language of HUD's implementing regulations directs that a PHA's
Administrative Plan "*is a supporting document*" to the Agency Plan.  24 C.F.R. § 982.54(b)
(emphasis supplied).  Defendants have not explained how the HAPGC Administrative Plan,
which was intended to "support" the 2014 Agency Plan, could in fact supersede and conflict with
it.  Defendants have certainly pointed to no authority, either in the QHWRA or in HUD's
implementing regulations, to suggest that a PHA can substantially amend its Agency Plan by
simply amending its supporting Administrative Plan after the fact.

    Moreover, a New Jersey federal court addressed this very issue in *Baldwin v. Housing
Authority of City of Camden*,  278 F. Supp. 2d 365, 381 (D.N.J. 2003), confirming that a PHA
could not amend its Agency Plan via an Administrative Plan.  In *Baldwin*, the plaintiff alleged
that the PHA's consideration of her credit in evaluating her suitability for the Section 8 program
violated her due process rights because the relevant Agency Plan did not include
creditworthiness as a screening criterion.  The PHA moved to dismiss, arguing that
creditworthiness was a screening criterion included in its Administrative Plan, and that its actions
"merely clarified [the housing authority's] already existing discretion to deny eligibility for
benefits on the basis of creditworthiness."  *Id.* at 380.  Though the relevant Administrative Plan
*did* include some language on credit screening, the *Baldwin* court denied the housing authority's
motion, finding that the Agency Plan, the planning document required by federal law, did not
include the creditworthiness criterion.  *Id.* at 382 ("[O]ver the course of three consecutive years,
the HACC Annual Plan, a document required under federal law, did not include creditworthiness
as a screening criterion to determine applicant eligibility.").  As the court pointed out

"***defendants ignore the logical inconsistency of their argument that the Administrative Plan accomplishes what the Annual Plan does not.***" *Id.* (emphasis supplied).  Defendants are making the same argument here that failed in *Baldwin*:  that their 2013 Administrative Plan does what their 2014 Agency Plan does not.  Indeed, the facts are even more jarring in this case, as the 2014 Agency Plan is explicit that the minimum rent is zero.  *See* Dkt. 22-3, p. 32.

The court in *Baldwin* also noted that the PHA later amended its planning documents to explicitly include creditworthiness, thereby discrediting the housing authority's argument that creditworthiness was always an available screening criterion.   278 F. Supp. 2d at 382 ("Such an argument, on its own, fails to survive careful analysis, however, given the subsequent amendment of both HACC's Annual Plan and the supporting Administrative Plan *specifically adding* creditworthiness as a basis for denial of Section 8 benefits.").  The identical fact pattern recurs here.  Defendants appear to have realized their earlier error and included all the cost-savings measures in their 2015 Agency Plan.[10]  Dkt. 22-3 at p. 40.  But Defendants ***did not*** include these cost-savings measures in the 2014 Agency Plan and cannot point to any portion of the 2014 Agency Plan purporting to do so.  Just as in *Baldwin*, this later attempted correction evidences Defendants' earlier error.

### C.    Defendants' Cost-Saving Measures Are Clearly Changes to "Rent Policies," and Therefore Were "Significant Amendments" to the 2014 Agency Plan

Administrative Plan aside, Defendants also take the curious position that their implementation of the cost-saving measures were not "significant changes or amendments" to the 2014 Agency Plan because "HAPGC did not change the rent as that term is commonly understood but how HAPGC calculated what share the tenant contributed towards rent and how

---

[10]     As discussed in footnote twelve, *infra*, Defendants have not established that the 2015 Agency Plan was properly implemented, and in fact, it was not.

many bedrooms the agency would provide subsidy towards." Defs.' Mem. at 15. Only in an absurdly literal sense would Defendants be correct that the rent did not change, because rent is set by landlords and not Defendants. "Rent" as it is commonly understood is "a usually fixed periodical return made by a tenant or occupant of property to the owner for the possession and use thereof; especially: *an agreed sum paid at fixed intervals by a tenant to the landlord*." *Merriam-Webster Collegiate Dictionary*, *available at* http://www.merriam-webster.com/dictionary/rent (last visited Jan. 8, 2014) (emphasis supplied).

The Section 8 HCVP, by its very nature, is a rent subsidy program. *See* Compl. ¶¶ 14-18. The amount of money that Section 8 program participants must pay for housing out of pocket is directly impacted by the cost-saving measures. *See* Compl. ¶ 32 (quoting 2013 Agency Plan at 58); *see also* Dkt. 22-3 at p. 33 (HAPGC's 2014 Agency Plan, defining "Significant Amendment and Substantial Deviation/Modifications" to include "Changes to rent or admissions policies"). Measures like payment standards and minimum rents directly impact Ms. Rogers' and Ms. Ross' out-of-pocket expenses. Occupancy standards—in other words, how many bedrooms a program participant is eligible to receive subsidy for—also directly impact the amount of rent subsidy.[11] In the case of Ms. Ross, the loss of a four bedroom subsidy voucher in favor of a three bedroom voucher dramatically impacted how much she paid in rent. *See* Compl. ¶ 85. In addition, the loss of her utility allowance also constituted an adjustment to her rent subsidy. *See Wright*, 479 U.S. at 420 ("HUD has consistently considered 'rent' to include a reasonable amount for the use

---

[11]     Defendants further argue that "[o]ccupany standards are addressed in an entirely different section of the Administrative Plan." *Id.* Defendants fail to explain how the fact that occupancy standards are in a different section could impact the analysis when the application of occupancy standards directly affects the amount of rent subsidy granted to Ms. Rogers and Ms. Ross.

of utilities."). Portability moves—in other words, where program participants can use their rent

subsidies—also clearly are aspects of "rent and admissions policies."

Any suggestion by Defendants that "HAPGC did not change the rent as that term is

commonly understood" is contrary to any reasonable reading of HAPGC's own planning

documents. These cost-saving measures constituted significant amendments to the Agency Plan

that did ***not*** appear in the 2014 Agency Plan and therefore were improperly implemented.

**IV.    That Defendants Intended to Implement the Cost-Saving Measures
         Regardless of the Feedback They Received Does Not Render Their Improper
         Implementation "Harmless"**

In an apparent concession that they failed to comply with requisite procedures prior to

implementing, Defendants argue that even if they had complied with those requirements, the

cost-saving measures would have been implemented in any event, and, therefore, any procedural

errors in doing so were harmless. *See* Defs.' Mem. 16 ("Plaintiffs do not allege that had the

notice, review, and comment activities occurred the cost-saving measures would not have been

passed anyway[.]"). Defendants' argument is flawed in at least two respects. First, by arguing

that the cost-saving measures would have been passed regardless of whether they satisfied the

necessary procedural requirements, Defendants acknowledge that they would have ignored the

concerns of Ms. Rogers and Ms. Ross had they been provided the opportunity to comment. This

position contradicts the purpose of the procedural requirements for implementing a significant

amendment or modification. These requirements are not an empty exercise, but rather provide a

meaningful opportunity for comment to those affected by potential changes to housing subsidies.

*See Dorsey v. Hous. Auth. of Baltimore City*, 984 F.2d 622, 629 (4th Cir. 1993) ("For the right to

notice and opportunity to comment to be meaningful, [t]enants should have had the right, at the

very least, to comment upon the PHA's decision not to alter the [utility] allowances or to re-

adopt the extant ones." (emphasis removed)); *see also Mathews v. Eldridge*, 424 U.S. 319, 333

(1976) ("The fundamental requirement of due process is the opportunity to be heard at a meaningful time and in a meaningful manner." (citations and internal quotation marks omitted)); *Chocolate Mfrs. Ass'n of U.S. v. Block*, 755 F.2d 1098, 1107 (4th Cir. 1985) ("Although ultimately their comments may well have been futile, . . . interested persons at least should have had the opportunity to make them.").

Defendants cannot subvert the procedural requirements for implementing a significant amendment or modification by asserting that any comments they would have received—had they not denied Ms. Rogers and Ms. Ross the opportunity to be heard—would not have affected their decision to implement the cost-saving measures.  This post-hoc justification is fundamentally opposed to the purpose of the procedural requirements and denies Ms. Rogers and Ms. Ross any meaningful consideration of their potential comments.  *See Am. Civil Liberties Union v. F.C.C.*, 823 F.2d 1554, 1581 (D.C. Cir. 1987) ("[T]he opportunity to comment is meaningless unless the agency responds to significant points raised by the public." (citations and quotation marks omitted)).

Second, Ms. Rogers and Ms. Ross are experiencing real and immediate harm from the improper implementation of these cost-saving measures.  Specifically, Defendants' invalid cost-saving measures reduced Ms. Rogers housing assistance payment from $1,076 to $932 each month.  Compl. ¶¶ 76-79.  Similarly, Ms. Ross received $1,900 in monthly rental assistance plus a $621 monthly utility allowance, but Defendants' improperly-implemented cost-saving measures reduced her rental assistance to $1,710 and completely eliminated her utility allowance.  Compl. ¶¶ 84-85.  In addition, due to the reduced voucher amount, Ms. Ross has been unable to secure housing.  Compl. ¶¶ 86-87.  Indeed, Ms. Ross did not learn of the implementation of the cost-saving measures until May 2014.  Compl. ¶ 49.  This notice was three

months after her benefits decreased and ten months after Defendants invalidly implemented the

cost-saving measures. Compl. ¶¶ 37, 45. By failing to follow the necessary procedures that

would have provided timely notice to Ms. Ross, Defendants deprived Ms. Ross of adequate time

to locate alternative housing. Defendants' argument that their implementation of the cost-saving

measures was harmless ignores these direct and immediate injuries to Ms. Rogers and Ms. Ross

that could have been avoided had Defendants followed the procedural requirements of the

Housing Act, its implementing regulations, and the Agency Plan and permitted Ms. Rogers and

Ms. Ross an opportunity to be heard.

Defendants further suggest that any error in implementing the cost-saving measures in the

2014 Agency Plan was harmless because the measures were already in the 2013 Administrative

Plan and are currently in the 2015 Agency Plan. However, Defendants reliance on the 2013

Administrative Plan fails for all of the reasons already provided above. Moreover, Defendants'

reliance on the 2015 Agency Plan is misplaced. First, Ms. Rogers and Ms. Ross do not concede

and Defendants have not established that the cost-saving measures, if any, in the 2015 Agency

Plan were properly implemented.[12] Those facts are not in the record currently before this Court.

Consequently, any reliance on the 2015 Agency Plan to suggest that the cost-saving measures

have been properly implemented is misplaced at the motion to dismiss or summary judgment

---

[12]     Defendant Brown states in his affidavit that the 2015 Agency Plan was adopted after
Defendants published a notice of public hearing. Dkt. 22-3 at p. 2. However, this notice of
public hearing was not published 45-days prior to the scheduled hearing. *Id.* at p. 35 (listing
publication dates of January 30, 2014, and February 6, 2014, providing notice of a hearing on
February 14, 2014); *see also* § 1437c-1(f)(2) (requiring publication of notice of a public hearing
"[n]ot later than 45 days before the date of a hearing"). In addition, the record is devoid of any
information concerning the attendees or substance of discussion for any public meeting that may
have been held concerning the 2015 Agency Plan. Therefore, the record does not establish that
Defendants met the requirements of the Housing Act and its implementing regulations when
adopting the 2015 Agency Plan. Until the record is further developed through discovery, any
reliance on the 2015 Agency Plan is misplaced.

stages, before Ms. Rogers and Ms. Ross have had an opportunity to conduct discovery on those

issues.  Second, even if Defendants can later establish that there was an opportunity to comment

on the 2015 Agency Plan and the cost-saving measures were properly implemented, the fact that

Ms. Rogers and Ms. Ross may not have availed themselves of this opportunity does not remedy

Defendants' failure to comply with the necessary procedural requirements when implementing a

significant amendment or modification to the 2014 Agency Plan.

## V.     Ms. Rogers and Ms. Ross Complied with All Relevant Notice Requirements Prior to Filing Their Lawsuit

Ms. Rogers and Ms. Ross provided notice of their claim under the Maryland Declaration

of Rights as required by Section 5–304(a) of the Local Government Tort Claims Act.  *See* Md.

Code Ann., Cts. & Jud. Proc. § 5–304 (2013)  ("[A]n action for unliquidated damages may not

be brought against a local government or its employees unless the notice of the claim required by

this section is given within 180 days after the injury.").  On March 27, 2014, Ms. Rogers' and

Ms. Ross' counsel mailed a letter to Defendant Brown outlining HAPGC's improper

implementation of the cost-saving measures—the basis for the allegation of the current

complaint—and explaining that litigation would commence if Defendants did not take corrective

action.  *See* Compl., Ex. A.  Defendants' argument  regarding Ms. Rogers' and Ms. Ross' alleged

noncompliance with the notice requirement fails to address, or even *acknowledge*, this letter.

The March 27 letter details Defendants' various violations of the Housing Act, its

implementing regulations, and the Agency Plan, and advised Defendants that if they did not take

corrective action, Ms. Rogers' and Ms. Ross' would have "no choice but to pursue immediate

legal recourse."  The letter further explained that in the absence of HAPGC's agreement to stay

the cost-saving measures and revert Ms. Rogers' and Ms. Ross' benefits to their pre-cost savings

levels, Ms. Rogers and Ms. Ross would "have no choice but to pursue legal remedies."  On April

24

2, 2014, through counsel, HAPGC provided an "initial response" to the March 27 letter, and invited the undersigned counsel to "meet[] to discuss these issues further."  (A copy of the email transmitting HAPGC's "initial response" and invitation to meet is attached hereto as Exhibit B.) That meeting ultimately took place on May 9, 2014.  *See* Compl. ¶ 52.

Ms. Rogers and Ms. Ross provided this notice within 180 days of the reduction in Ms. Rogers' and Ms. Ross' housing assistance payments.[13]  That said, even if the Court were to conclude that the injury occurred earlier (e.g., when the cost-saving measures were adopted in mid-2013), Ms. Rogers and Ms. Ross substantially complied with section 5–304 because the notice they provided satisfied the statute's purpose:  to apprise defendants of a possible claim "while the evidence was still fresh and the recollection of the witnesses was undiminished by time."  *Id.* (internal citation and quotation marks omitted); *see also Moore v. Norouzi*, 807 A.2d 632, 640-41 (Md. 2002) ("[S]ubstantial compliance with the statutory requirements may nevertheless satisfy the statute where the purpose of the notice requirement is fulfilled.").  Here, Ms. Rogers' and Ms. Ross' claims do not rely on witness recollections, but rather on records already in Defendants' possession that underlie the implementation of the cost-saving measures. As a result, providing notice on March 27, 2014, satisfied the evidence-preserving purpose of the statute.[14]

---

[13]    Plaintiff Rogers received notice of the newly-calculated housing assistance payments in mid-January and the level of benefits she received decreased on February 1, 2014.  Compl. ¶ 48. Ms. Ross received notice in May 2014 and her level of benefits decreased on February 2, 2014. Compl. ¶ 49.

[14]    Any minor issues with Ms. Rogers' and Ms. Ross' notice are alleviated by the substantial compliance exception.  For instance, although section 5-304(c)(1) provides that the notice should be sent by certified mail, return receipt requested, the March 2014 letter was sent by First Class Mail.  Nevertheless, Defendants acknowledged receipt of the letter on April 2, 2014.  Also, while the March 2014 letter was not sent specifically on behalf of Ms. Rogers and Ms. Ross, the letter

Finally, even assuming for the sake of argument that the notice was insufficient and Ms. Rogers and Ms. Ross did not substantially comply with section 5–304, there is good cause to allow the claim to proceed.  In its discretion, a court may determine that good cause exists when the plaintiff exercised the diligence of an ordinarily prudent person in prosecuting her claim.  *See Madore v. Baltimore Cnty.*, 367 A.2d 54, 57 (Md. 1976); *see also Bibum v. Prince George's Cnty.*, 85 F. Supp. 2d 557, 565 (D. Md. 2000).  By informing Defendants of their claims as soon as practical and meeting with Defendants in an attempt to resolve these issues prior to filing suit, Ms. Rogers and Ms. Ross and their counsel have diligently prosecuted these claims.  Further, Defendants have not been prejudiced by any potential lack of notice, as they had actual notice within a reasonable time and these claims are supported primarily by documentary evidence already in Defendants' possession.

---

advised Defendants of the substance of Ms. Rogers' and Ms. Ross' claims and put Defendants on notice that Section 8 housing recipients, such as Ms. Ross and Ms. Rogers, may bring claims.

**CONCLUSION**

For all of the reasons set forth herein, Ms. Rogers and Ms. Ross respectfully request that

Defendants' Motion to Dismiss, or in the Alternative, for Summary Judgment, be denied.

Respectfully Submitted,

**Maryland Legal Aid Bureau**

_____/s/_____
Sabrina B. Wear, Esq.
MARYLAND LEGAL AID BUREAU
6811 Kenilworth Ave., Suite 500
Riverdale, MD 20737
Phone: (301) 560-2145
Fax: (301) 927-4258
E-mail: swear@mdlab.org
Bar No: 16922


Susan B. Cassidy, Esq.*
Anuj Vohra, Esq.*
Nooree Lee, Esq.*
COVINGTON & BURLING LLP.
1201 Pennsylvania Avenue, NW
Washington, DC  20004
Phone: (202) 662-6000
Fax:    (202) 778-5348
Email:  scassidy@cov.com
            avohra@cov.com
            nlee@cov.com

*Admitted pro hac vice

***Counsel for Plaintiffs***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on January 9, 2015, the forgoing document was filed with the Clerk of the Court via the CM/ECF system, causing it to be served on Defendants' counsel of record.

_____/s/_____

Sabrina B. Wear, Esq.
Maryland Legal Aid