**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF MARYLAND**
*Southern Division*

|  |  |  |
|---|---|---|
| | * | |
| **GEORGIA ROGERS, *et al.*,** | | |
| | * | |
| **Plaintiffs,** | | |
| | * | |
| **v.** | | **Case No.: PWG-14-2940** |
| | * | |
| **HOUSING AUTHORITY OF PRINCE** | | |
| **GEORGE'S COUNTY, *et al.*,** | | |
| | * | |
| **Defendants.** | | |
| | * | |

\*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*    \*

**MEMORANDUM OPINION AND ORDER**

This Memorandum Opinion addresses the Motion to Dismiss, or, in the Alternative, Motion for Summary Judgment, ECF No. 22, that Defendants Housing Authority of Prince George's County and Executive Director Eric C. Brown filed; Plaintiffs Georgia Rogers and Shantay Ross's Opposition, ECF No. 27; and Defendants' Reply, ECF No. 30.  A hearing is unnecessary in this case.  *See* Loc. R. 105.6.  Because I find that the Plaintiffs have standing to bring their claims, have pleaded plausible claims under the Constitution and Maryland Declaration of Rights, and that they substantially complied with the notice requirements of the Local Government Tort Claims Act, the , Defendants' Motion to Dismiss, or in the Alternative, Motion for Summary Judgment is DENIED.

The essence of this case is plainly stated.  Plaintiffs receive federal subsidies under the Housing Choice Voucher Program ("Voucher Program") for their home rental expenses from Defendant Housing Authority of Prince George's County ("Housing Authority"), which administers the Voucher Program in Prince George's County, Maryland.  Compl. ¶¶ 1 & 7, ECF

No. 1.  Defendant Eric C. Brown is the Executive Director of the Housing Authority and "is responsible for overseeing [the Housing Authority's] policies and operations."  *Id.* ¶ 8.  Plaintiffs allege that changes in the Housing Authority's policies that decreased the value of Plaintiffs' voucher subsidies violated their due process rights under the Fourteenth Amendment and Article 24 of the Maryland Declaration of Rights.

## I.      BACKGROUND AND RELATED LAW

### A.  The Voucher Program and Related Law

The Section 8 Voucher Program ("Voucher Program") is governed by 42 U.S.C. § 1437f(o) and the U.S. Department of Housing and Urban Development's ("HUD") implementing regulations, 24 C.F.R. part 982.  Under the Voucher Program, local public housing agencies ("Housing Agencies") select tenants and landlords to participate in the Voucher Program and determine the amount of subsidy, called a Housing Assistance Payment ("Assistance Payment"), for which each tenant is eligible.  24 C.F.R. § 982.635.

The Quality Housing and Work Responsibility Act ("Quality Act"), Pub. L. No. 105-276, 112 Stat. 2461, requires Housing Agencies to submit to HUD both 5-year and annual plans governing the provision of federal subsidies to eligible tenants, *see* 42 U.S.C. § 1437f(o).  The annual plan must include "[a] statement of the polices of the public housing agency governing rents charged for public housing dwelling units and rental contributions of families assisted under section 1437(o) of this title."  42 U.S.C. § 1437c-1(d)(4); *see also* 24 C.F.R. § 903.4.

The Quality Act permits Housing Agencies to modify their annual plans but provides specific restrictions and procedures for "a significant amendment or modification [of the annual plan]."  42 U.S.C. § 1437c-1(g)(1).  A significant amendment or modification must be adopted at

"a duly called meeting of board of directors (or similar governing body) of the public housing agency that is open to the public" and may not be implemented "until notification of the amendment or modification is provided to [HUD]."   *Id.*; *see also* 24 C.F.R. § 903.21. Additionally, Housing Agencies must consult with the resident advisory board described in 42 U.S.C. § 1437c-1(e) and satisfy notice and public hearing requirements in 42 U.S.C. § 1437c-1(f).  42 U.S.C. § 1437c-1(g)(2).

In addition to an annual plan, Housing Agencies must adopt an administrative plan "that establishes local policies for administration of the [voucher program] in accordance with HUD requirements."  24 C.F.R. § 982.54(a).  HUD regulations govern the administrative plan.  *Id.* § 982.54(b).  The administrative plan "is a supporting document to the [annual plan] . . . and must be available for public review."  *Id.*

### B.  Housing Authority of Prince George's County and its Agency Plans

The Housing Authority is a Housing Agency subject to the requirements of the Quality Act.  On April 17, 2012, the Housing Authority published its 5-Year and 2013 annual plan (collectively, the "2013 Agency Plan").  Compl. ¶ 27.  The 2013 Agency Plan established that "Section 8 payment standards were at 100% of Fair Market Rents" and that "[t]he Minimum Rent for Section 8 is $0."[1]  *Id.* ¶¶ 27 & 28 (citing the 2013 Agency Plan at 21).  The 2014 annual plan ("2014 Agency Plan"), dated April 15, 2013, also set payment standards at 100% of Fair Market Rents and the minimum rent at $0.  2014 Agency Plan, Brown Aff. Ex. C., Defs.' Mem.

---

[1]    Minimum rent is not defined in the Housing Authority's annual plans.  The Housing Authority describes minimum rent as the amount of rent that "[e]ach participant must pay regardless of income."  Housing Authority Letter to Voucher Program Participants, Compl. Ex. I, ECF No. 1-9

Ex. 1, ECF No. 22-3, at 32.[2]   As required by HUD regulations, the 2013 Agency Plan defines "Significant Amendment and Substantial Deviations/Modifications to the Plan" as including "[c]hanges to rent or admissions policies or organization of the waiting list."   *Id.* ¶¶ 31 & 32 (quoting 2013 Agency Plan at 58).   The Housing Authority's 2013 Agency Plan requires that the Housing Authority follow specific procedures consistent with HUD regulations "before making any significant amendments or substantial deviation/modification to the Agency Plan."   *Id.* ¶ 33. According to the Housing Authority's 2013 Agency Plan, it must

(1) Consult with the Resident Advisory Board.

(2) Ensure consistency with the Consolidated Plan of the jurisdiction(s).

(3) Provide for a review of the amendment/modifications by the public during a 10-day public review period.

(4) Adopt the amendment or modification at a duly called meeting of [the Housing Authority's] Board of commissioners that is open to the public.

(5) Notify and obtain approval from HUD "in accordance with HUD's plan review procedures."

*Id.* ¶ 33 (quoting 2013 Agency Plan at 58).   Both the Housing Authority's 2014 Agency Plan and 2015 annual plan ("2015 Agency Plan") contain identical language to the 2013 Agency Plan with respect to the procedures "that must be followed prior to making any significant amendments or substantial deviations/changes to [the Housing Authority's] Agency Plan."   2014 Agency Plan, ECF No. 22-3, at 33; 2015 Agency Plan, Brown Aff. Ex. D., Defs.' Mem. Ex. 1, ECF No. 22-3, at 41.

In a letter dated July 23, 2013, and signed by Brown, the Housing Authority announced that it was "tak[ing] a number of cost savings measures and program adjustments" to the

---

[2]      All of Defendants' Exhibits appear as attachments to Brown's Affidavit and are filed together as ECF No. 22-3.  Because many documents have unnumbered pages, I refer to the page number of the electronic filing for convenience.

Voucher Program "because of federal budget cuts."   Housing Authority Letter to Voucher Program Participants, ECF No. 1-9.  The Housing Authority identified a number of cost-savings measures, including an increase in the minimum rent from $0 to $50 and "the imposition of new occupancy standards . . . 'based on 2 persons per bedroom regardless of relation, gender, or age.'"  *Id.*  Plaintiffs also allege that the Housing Authority applied lower payment standards that "resulted in significant drops to voucher amounts."  Compl. ¶ 37.

### C.  Plaintiffs' Participation in the Voucher Program

Plaintiffs claim that the July 23, 2013, letter announcing the cost-saving measures was not mailed to them as Voucher Program participants until "the time of, or sometimes after, their annual reexaminations," if at all.  *Id.* ¶¶ 46, 47, 74 & 82.   Rogers received a letter dated January 13, 2014, from the Housing Authority informing her that her Assistance Payment would decrease in value from $1,076 to $938 effective February 1, 2014.  *Id.* ¶¶ 76 & 77.  Rogers received a second letter dated February 11, 2014, in which the Housing Authority further reduced the value of Rogers's voucher to $932, effective April 1, 2014.  Ross received a letter dated January 1, 2014, from the Housing Authority informing her that her Assistance Payment would decrease in value from $1,900 with a utility allowance of $621 to $1,710 with no utility allowance.  *Id.* ¶¶ 84 & 85.  According to Plaintiffs, Ross's "new subsidy amount was calculated using a 3-bedroom, instead of a 4-bedroom voucher, and was a direct result of the cost-saving measures."  *Id.*

Viewing these changes as significant and the notice as inadequate, Plaintiffs filed a two-count complaint against Defendants Housing Authority and Brown for violation of their Fourteenth Amendment right to due process, pursuant to 42 U.S.C. § 1983, (Count I) and violations of Article 24 of the Maryland Declaration of Rights (Count II).

5

## II.      STANDARDS OF REVIEW

Federal Rule of Civil Procedure 12(b)(6) provides for "the dismissal of a complaint if it fails to state a claim upon which relief can be granted." *Velencia v. Drezhlo*, No. RDB-12-237, 2012 WL 6562764, at *4 (D. Md. Dec. 13, 2012). This rule's purpose "'is to test the sufficiency of a complaint and not to resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses.'" *Id.* (quoting *Presley v. City of Charlottesville*, 464 F.3d 480, 483 (4th Cir. 2006)). To that end, the Court bears in mind the requirements of Fed. R. Civ. P. 8, *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007), and *Ashcroft v. Iqbal*, 556 U.S. 662 (2009), when considering a motion to dismiss pursuant to Rule 12(b)(6). Specifically, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief," Fed. R. Civ. P. 8(a)(2), and must state "a plausible claim for relief," as "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice," *Iqbal*, 556 U.S. at 678–79. *See Velencia*, 2012 WL 6562764, at *4 (discussing standard from *Iqbal* and *Twombly*). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

When reviewing a motion to dismiss, "[t]he court may consider documents attached to the complaint, as well as documents attached to the motion to dismiss, if they are integral to the complaint and their authenticity is not disputed." *Sposato v. First Mariner Bank*, No. CCB-12-1569, 2013 WL 1308582, at *2 (D. Md. Mar. 28, 2013); *see CACI Int'l v. St. Paul Fire & Marine Ins. Co.*, 566 F.3d 150, 154 (4th Cir. 2009); *see also* Fed. R. Civ. P. 10(c) ("A copy of a written instrument that is an exhibit to a pleading is a part of the pleading for all purposes."). Moreover, where the allegations in the complaint conflict with an attached written instrument, "the exhibit

prevails." *Fayetteville Investors v. Commercial Builders, Inc.*, 936 F.2d 1462, 1465 (4th Cir. 1991); *see Azimirad v. HSBC Mortg. Corp.*, No. DKC-10-2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011).  If the documents that the Court considers exceeds this scope, the Court must treat the motion as a motion for summary judgment.  Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Group, Inc.*, 916 F. Supp. 2d 620, 623 (D. Md. 2013).

Summary judgment is proper when the moving party demonstrates, through "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials," that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a), (c)(1)(A); *see Baldwin v. City of Greensboro*, 714 F.3d 828, 833 (4th Cir. 2013).  If the party seeking summary judgment demonstrates that there is no evidence to support the nonmoving party's case, the burden shifts to the nonmoving party to identify evidence that shows that a genuine dispute exists as to material facts.  *See Celotex v. Catrett*, 477 U.S. 317 (1986).  The existence of only a "scintilla of evidence" is not enough to defeat a motion for summary judgment.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 251–52 (1986).  Instead, the evidentiary materials submitted must show facts from which the finder of fact reasonably could find for the party opposing summary judgment. *Id.*

## III.   DISCUSSION

### A. Standing

Defendants argue that Plaintiffs lack standing because they "complain about the process followed to implement a change to [the Housing Authority's] Agency Plan," and "[t]he rights complained about are not personal but are more general," such that "[t]he procedural harm about

which they complain is not theirs to raise and not their role to remedy: HUD has the exclusive right to enforce." Defs.' Mem. 12. Although both parties reference the standard for Article III standing in their memoranda, which is a jurisdictional matter, see Pls.' Opp'n 7; Defs.' Reply 4, whether a private cause of action exists is a question of statutory standing, "a concept distinct from Article III and prudential standing." *CGM, LLC v. BellSouth Telecomms., Inc*., 664 F.3d 46, 52 (4th Cir. 2011). "Statutory standing 'applies only to legislatively-created causes of action' and concerns 'whether a statute creating a private right of action authorizes a particular plaintiff to avail herself of that right of action.'" *Id.* (quoting Radha A. Pathak, *Statutory Standing and the Tyranny of Labels*, 62 Okla. L. Rev. 89, 91 (2009)). The Court's analysis to determine statutory standing is a matter of "'statutory interpretation: the question it asks is whether Congress has accorded this injured plaintiff the right to sue the defendant to redress his injury.'" *Id.* (quoting *Graden v. Conexant Sys., Inc.*, 496 F.3d 291, 295 (3d Cir. 2007) (internal citations omitted)); *see Wash.-Dulles Transp., Ltd. v. Metro. Wash. Airports Auth.*, 263 F.3d 371, 377 (4th Cir. 2001). The statutory language is the starting point for the Court's analysis, and when it is unambiguous, the endpoint as well. *CGM*, 664 F.3d at 53 (citing *Wilmington Shipping Co. v. New Eng. Life Ins. Co.*, 496 F.3d 326, 339 (4th Cir. 2007)). When the language is ambiguous, the Court "look[s] to legislative intent." *Id.*

Assuming arguendo that no private cause of action exists under either the Quality Act or HUD's regulations for Plaintiffs to challenge Defendants' compliance with the Quality Act, HUD regulations, or the Housing Authority's 2014 Agency Plan "for significant amendments to the Agency Plan prior to instituting the cost-saving measures," Compl. ¶ 41, Plaintiffs' claims may still proceed. This is because Plaintiffs allege a violation of their constitutional due process rights under the Fourteenth Amendment, pursuant to 42 U.S.C. § 1983, and not a violation of

their statutory rights.  "Section 1983 provides a remedy against any person who, acting under color of law, deprives another of constitutional rights." *Bixler v. Harris*, No. WDQ-12-1650, 2013 WL 2422892, at *5 (D. Md. June 3, 2013) (citing 42 U.S.C. § 1983).  Plaintiffs do not need to rely on a private cause of action under the Quality Act or HUD regulations to bring a § 1983 claim.  Defendants' alleged violations of the Quality Act, HUD's regulations, and the Housing Authority's 2014 Agency Plan are merely evidence that Plaintiffs' due process rights were violated.  Therefore, Defendants' motion to dismiss based on lack of standing will be denied.

### B.  Section 1983 Claim against Brown

42 U.S.C. § 1983 states:

> Every person who, under color of any statute, ordinance, regulation, custom or usage of any State or Territory or the District of Columbia, subjects or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

Defendants argue that the § 1983 claim against Brown should be dismissed because "nowhere in the body of the Complaint does it ever identify any wrongful action or omission by Brown." Defs.' Mem. 19.  But, Plaintiffs sue Brown in his official capacity as Executive Director of the Housing Authority, which as a unit of local government is a "person[] which may be sued under § 1983 although . . . not on a *respondeat superior* basis."  *DiPino v. Davis*, 729 A.2d 354, 368 (Md. 1999); *see Monell v. Dep't of Soc. Servs.*, 436 U.S. 658, 690–91 (1978); 42 U.S.C. § 1983. "[O]fficial-capacity suits generally represent only another way of pleading an action against an entity of which an officer is an agent."  *Monell*, 436 U.S. at 690 n.55.

Indeed, a local government only may be sued through an official-capacity action, which "is really an action against the governmental entity, of which the official was merely an agent,"

where the official "'implement[s] governmental law, policy, or custom,' i.e., the deprivation underlying the § 1983 claim is 'caused by a statute, regulation, policy, or custom of the governmental entity' that the official was implementing." *DiPino*, 729 A.2d at 369 (quoting *Ashton v. Brown*, 660 A.2d 447, 468 (Md. 1995)).  Therefore, Brown is, when sued in his official capacity as Executive Director of the Housing Authority, liable for any wrongful act or omission of the Housing Authority.

### C.  Sufficiency of § 1983 Claim

To state a § 1983 claim of "entitlement to the protections of the due process clause . . . a plaintiff must first show that he has a constitutionally protected 'liberty' or 'property' interest . . . and that he has been 'deprived' of that protected interest by some form of 'state action.'" *Stone v. Univ. of Md. Med. Sys. Corp.,* 855 F.2d 167, 172 (4th Cir. 1988) (citing *Bd. of Regents v. Roth*, 408 U.S. 564 (1972); *Daniels v. Williams*, 474 U.S. 327 (1986)).

Plaintiffs' right to low-rent housing is a constitutionally protected property interest.  *See Caulder v. Durham Hous. Auth.*, 433 F.2d 998, 1001, 1003 (4th Cir. 1970) (stating that "state-created, federally-funded, locally-administered housing authorities are constrained to conduct their operations within the limits of the due process clause of the fourteenth amendment," and "[t]he 'privilege' or the 'right' to occupy publicly subsidized low-rent housing" is "entitled to due process protection"); *see also Davis v. Mansfield Metro. Hous. Auth.*, 751 F.2d 180, 184 (6th Cir. 1984) ("[P]articipation in a public housing program is a property interest protected by due process."); *Goldberg v. Kelly*, 397 U.S. 254 (1970) (finding that the due process clause applies to the termination of welfare benefits generally).  I must accept the facts as alleged in Plaintiffs' complaint as true.  *See Aziz v. Alcolac*, 658 F.3d 388, 390 (4th Cir. 2011).  Accepting these facts

as true, the Housing Authority took state action, through amendments and modifications to the 2014 Agency Plan, and the subsequent redeterminations of Plaintiffs' Assistance Payments, that deprived Rogers and Ross of notice and a hearing about the changes to the 2014 Agency Plan, *see* Compl. ¶¶ 40–43, 77, 79, & 84, despite the Quality Act's guarantee that they receive notice and an opportunity to be heard. *See, e.g.*, 42 U.S.C. § 1437c-1(f). Specifically, the amendments included changing the minimum rent from $0 to $50 and changing the way that family unit size, and thereby the Assistant Payment, was determined. *See* 2014 Agency Plan, ECF No. 22-3, at 32; Housing Authority Letter to Voucher Program Participants, ECF No. 1-9. In Plaintiffs' view, because they were not notified of these changes and given the opportunity to be heard, they were deprived of $144 and $811, respectively, in vouchers to reduce their monthly rent, thereby depriving them of their constitutionally protected interest in low-rent housing. *See* Compl. ¶¶ 94 & 95; Pls.' Opp'n 8–9. But, "the mere fact that state action sets in motion a chain of events that ultimately leads to loss of a plaintiff's protected interest does not of itself establish that there has been a 'deprivation by state action' in the constitutional sense." *Stone*, 855 F.3d at 173 (citing *Martinez v. California*, 444 U.S. 277, 281 (1980) (finding that state's release of parolee who later murdered an individual did not deprive murdered individual of life within the meaning of the Fourteenth Amendment).

In any event, as Defendants see it, Plaintiffs fail to allege a due process violation because "no significant amendment or modification occurred," and the Housing Authority "is only bound to follow the notice comment procedure when the change involves a significant amendment or modification to certain defined terms." Defs.' Mem. 14. Thus, the issue is whether either the change in the minimum rent or the change in how family unit size is determined constitutes a significant amendment or modification for which notice is required.

The answer is clear:   the amendments changing the minimum rent and occupancy standards increase the amount of rent that the Voucher Program participants must pay and are "significant amendments" under the Housing Authority's own Agency Plans.  *See* 2014 Agency Plan, ECF No. 22-3, at 33.   As such, the Housing Authority was required to follow certain procedures for notice and comment as set forth in the Quality Act, corresponding HUD regulations 24 C.F.R. § 903.21, or the 2014 Agency Plan.  Plaintiffs allege, and Defendants do not deny , that the Housing Authority did not follow the mandated procedures.  Consequently, Plaintiffs have sufficiently pleaded that their due process rights were violated by the Housing Authority's amendment to its 2014 Agency Plan.  Therefore, I will deny Defendants' motion to dismiss as it relates to Count I of Plaintiffs' complaint.  *See* Fed. R. Civ. P. 12(b)(6).

Moreover, even treating Defendants' motion as a motion for summary judgment, I cannot grant it.  Discovery has not yet occurred in this case, and significant factual disputes exist.  It is unclear on the record before me the effective dates of and interplay between the Administrative Plans and Agency Plans in 2013, 2014, and 2015.  Consequently, I cannot determine as a matter of law the contents of the Administrative Plan as of the date the 2014 Agency Plan was amended, whether the contents of the Administrative Plan foreclosed a need for notice with respect to the changes to the 2014 Agency Plan, or whether the lack of notice, even if required, was harmless. Therefore, summary judgment in Defendants' favor is not appropriate at this time.  *See* Fed. R. Civ. P. 56(a).

### D.  Article 24 Maryland Declaration of Rights Claim (Count II)

"Article 24 due process claims are read *in pari materia* with Fourteenth Amendment due process claims, except in limited circumstances in which Article 24 may be interpreted more

broadly." *Ross v. Cecil Cnty. Dep't of Soc. Servs.*, 878 F. Supp. 2d 606, 622 (D. Md. 2012) (citing *Koshko v. Haining*, 921 A.2d 171, 194 n.22 (Md. 2007) ("Our precedent states clearly that the Maryland and Federal due process provisions have been read '*in pari materia*.'")). Therefore, Plaintiffs have stated a claim under Article 24 of the Maryland Declaration of Rights as well. *See id.*

Defendants argue that the Court should dismiss Count II because Plaintiffs failed to comply with the notice requirement of the Local Government Tort Claims Act ("LGTCA"), Md. Code Ann., Cts. & Jud. Proc. §§ 5-301–5-304.  Defs.' Mem. 17–19.  Under the LGTCA, local governmental entities can be held liable for state constitutional torts and common law torts. *See Martino v. Bell*, 40 F. Supp. 2d 719, 723 (D. Md. 1999); *DiPino*, 729 A.2d at 370–71.  However, to sue a local government or its employees for unliquidated damages, a plaintiff must provide written notice of the claim within 180 days after the injury giving rise to the suit.  Cts. & Jud. Proc. § 5-304(b).  Further, the notice must "state the time, place, and cause of the injury," *id.* § 5-304(b)(2), and it must be provided to the county solicitor or county attorney, *id.* § 5-304(c)(3)(iii).

Failure to give actual notice is not fatal to a claim if a plaintiff substantially complies with the notice requirements.  *Huggins v. Prince George's Cnty., Md.*, 683 F.3d 525, 538 (4th Cir. 2012).  Substantial compliance is a narrow exception to the LGTCA notice requirement:

> The touchstone of substantial compliance is whether the alleged notice was sufficient to fulfill the purpose of the requirement. The purpose of the notice requirement is to apprise local governments of possible liability at a time when they can conduct their own investigation into the relevant facts, while evidence and the recollection of witnesses are still fresh. Thus, substantial compliance will occur when the local government receives actual notice such that it is given the opportunity to properly investigate the potential tort claim.

*Huggins*, 683 F.3d at 538 (quoting *Hansen v. City of Laurel*, 996 A.2d 882, 891 (Md. Ct. Spec. App. 2010) (alteration, citation, and internal quotation marks omitted)). Notably, "substantial compliance has no application to an outright failure to comply." *Moore v. Norouzi*, 807 A.2d 632, 643 (Md. 2002) (citing *Blundon v. Taylor*, 770 A.2d 658, 670 (Md. 2001)). Therefore, "[t]here must be some effort to provide the requisite notice and, in fact, it must be provided, albeit not in strict compliance with the statutory provision." *Id.* Also, in addition to showing "substantial compliance as to the content of the notice within the 180-day period," a plaintiff must show substantial compliance "as to the statutory recipient." *Huggins*, 683 F.3d at 538.

Counsel for Plaintiffs sent a letter dated March 27, 2014, via email and first class mail to Brown, as Executive Director of the Housing Authority, at the Housing Authority's address and Brown's government email address. Plaintiffs' Counsel's Letter to Brown, Compl. Ex. A, ECF No. 1-1. This letter notified the Housing Authority that its implementation of certain cost-saving measures "violate[d] [Voucher Program] regulations and guidance promulgated by [HUD], as well as [the Housing Authority's] own Administrative Plan." *Id.* at 1. The letter then detailed the Housing Authority's alleged violations, stating the time and place of the violations, and concluded by stating that "[i]n the absence of [the Housing Authority's] agreement [to stay its cost-saving measures], we will have no choice but to pursue legal remedies, including injunctive relief, to protect the rights of those participants." *Id.* at 7.

Defendants responded to Plaintiffs' letter acknowledging that they had received it and informed Plaintiffs that they had initiated an internal investigation into the letter's allegations. Compl. ¶ 51; Housing Authority's Reply Letter to Plaintiffs' Counsel, Compl. Ex. C, ECF No. 1-3. "Defendants do not deny receipt or contest how it was received," but rather argue that the

letter does not state "who claims damages and what the damages are."   Defs.' Reply 14.[3]

Therefore, the purpose of notice discussed above in *Huggins*, that "the local government receives

actual notice such that it is given the opportunity to properly investigate the potential tort claim"

was satisfied by Plaintiffs' counsel's email and letter to Brown.  *See Huggins*, 683 F.3d at 538.

For these reasons, Plaintiffs complaint is not subject to dismissal for failure to comply

with the LGTCA, and I will deny Defendants' motion to dismiss as it relates to Count II of

Plaintiffs' complaint.  *See* Fed. R. Civ. P. 12(b)(6).

### E.  Plaintiffs' Request for Injunctive Relief

Defendants request that I deny Plaintiffs' request for injunctive relief.  Defs.' Mem. 22.

Because Plaintiffs have not yet filed a motion for a temporary restraining order or for

preliminary injunctive relief, and because significant factual disputes remain that must be

resolved before any claim for injunctive relief may be decided, it would be premature to rule on

this request at this time.

### ORDER

Accordingly, it is this 8th day of September, 2015, hereby ORDERED that Defendants'

Motion to Dismiss, or in the Alternative, Motion for Summary Judgment, ECF No. 22, is

DENIED.  Defendants' answer is due on September 29, 2015.

---

[3]    Defendants argue that the Plaintiffs' counsel's letter "fails entirely to identify whom the
damaged party is" and therefore "falls woefully short of substantial compliance."  Defs.' Reply
13.  § 5-304(b)(2) requires that the notice "shall be in writing and shall state the time, place, and
cause of the injury" and § 5-304(c)(1) provides that the notice be sent "by the claimant or the
representative of the claimant."   The statute does not require that the claimant be named.
Further, the lack of a named claimant did not appear to hinder Defendants' self-initiated
investigation of the allegations in Plaintiffs' counsel's letter to Defendants, which further
demonstrates that the letter provided sufficient notice to Defendants to enable them to initiate the
timely investigation contemplated by the statute.

So ordered.

Dated: <u>September 8, 2015</u>                          <u>        /S/                </u>
                                                        Paul W. Grimm
                                                        United States District Judge


dpb